UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10 -11849-RWZ

RONALD S. BOYAJIAN, et al.,

v.

CALIFORNIA PRODUCTS CORP., et al.

ORDER

September 28, 2011

ZOBEL, D.J.

Ronald Boyajian on behalf of himself and others similarly situated brought this class action against California Products Corporation ("CPC") and its directors and officers ("Individual Defendants") for several violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). The complaint arises out of the termination and sale of the stock of an Employee Stock Ownership Plan ("ESOP") that had been formed and operated by the defendants and alleges breach of fiduciary duties (Counts I, II and IV), engaging in a prohibited transaction (Count III) and failing to disclose a valuation report (Count V). Plaintiffs were participants in the CPC ESOP plan.

Since the inception of the ESOP in 1988, the ESOP's assets were comprised almost exclusively of convertible preferred stock of CPC. Sometime prior to January 1, 2005 the defendants terminated the ESOP and repurchased the outstanding shares held by the ESOP participants (the "Repurchase").

Before the Repurchase, defendants retained Willamette Management Associates ("WMA"), a firm specializing in business valuation and economic and financial analysis, to calculate the value of the CPC convertible preferred stock. WMA, in a written report, valued the CPC shares at the time of the Repurchase at $5.816 per share.

The chronology of the Repurchase and subsequent termination of the ESOP is hazy in plaintiffs' recitation of the facts. According to the complaint, on November 3, 2004, the defendants filed termination documents with the Internal Revenue Service. Then at some time prior to January 2005, the Repurchase occurred and the ESOP was terminated; however, the complaint does not specify dates for the intermediate transactions. On January 31, 2005, the ESOP participants were provided with their plan statements for 2004 (Docket # 1 Ex. A) which reflected that their CPC stock holdings had been converted to cash at a value of $5.816 per share (but did not include the date of this conversion). On August 31, 2005, participants were provided with a final calculation of the value of their accounts and a form that requested each participant to elect and certify an option directing how his/her account balances were to be distributed. (Docket # 1 Ex. B.)

More than two years after the distribution, in November 2007, CPC was sold to a private equity company for approximately $78 million dollars, which represented a price of $45.58 per share.

Plaintiffs assert that defendants breached their fiduciary duties to plaintiffs by, inter alia, recommending and ultimately acting on a share price that was severely undervalued, and failing to properly investigate whether WMA's conclusions were

2

appropriate, correct, and in the best interest of the plan participants.

Currently before the court are (1) defendant CPC's and the Individual Defendants' motions to dismiss (Docket ## 19 and 22 ); (2) plaintiffs' motion to submit additional authority (Docket # 34); and (3) plaintiffs' motion for leave to file an amended complaint (Docket # 35).

## I. Defendants' Motions to Dismiss

On a motion to dismiss the "court takes as true all well-pleaded facts in the complaint[], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir.2009). The inquiry is therefore limited to facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

The defendants move to dismiss the complaint principally on statute of limitations grounds.[1]

Under ERISA 29 U.S.C. § 1113(a):

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of-
> (1) six years after
> (A) the date of the last action which constituted a part of the breach or violation, or
> (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

[1]CPC focuses its motion to dismiss on ERISA's six-year limit, see 29 U.S.C. § 1113(a)(1), while the Individual Defendants focus on ERISA's three-year limit, see 29 U.S.C. § 1113(a)(2).

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Setting aside the question of when or whether plaintiffs ever had "actual knowledge"[2] of the alleged breach, plaintiffs, at a minimum, had to file their complaint within six years from the last action that constituted part of the breach (absent tolling on "fraud or concealment" grounds which the court addresses below).

The complaint was filed on October 28, 2010. Therefore, if defendants can establish that the alleged breach was completed prior to October 28, 2004, the statute of limitations would bar plaintiffs' claims. In support of their motions, defendants submit (1) bank records, purportedly evidencing the Repurchase transactions, dated in March 2004; and (2) an April 2004 memo, allegedly sent to plan participants and confirming the date of the Repurchase as March 2004. Understandably, plaintiffs object to the court's consideration of these documents which are outside the four corners of the complaint because the precise date of the Repurchase may be dispositive of these motions (and perhaps the case). Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002) ("[t]he fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's Complaint.") "[D]ocuments whose

---

[2]There cannot be actual knowledge of a violation for purposes of the statute of limitations period unless a plaintiff knows "the essential facts of the transaction or conduct constituting the violation... determining the meaning of complex transactions may take some time; mere knowledge of facts indicating that 'something was awry' does not always mean there is actual knowledge of a violation." Edes v. Verizon Communications, Inc., 417 F.3d 133, 142 (1st Cir. 2005). Therefore, the question of whether and when the plaintiffs here had "actual knowledge" of the alleged violation is essentially a factual question that is not answered with reference to this record.

4

contents are alleged in a complaint <u>and whose authenticity no party questions</u>, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir.1998) (emphasis added).

In their complaint the plaintiffs make no reference to the bank statements or the specific date of the Repurchase, and both the authenticity and the import of these records are hotly contested by the parties. For these reasons, it is not proper for the court to consider the bank records at this stage.

The April 2004 memo is a slightly closer call because it appears that certain language therefrom is relied on by plaintiffs in the complaint. Plaintiffs, nevertheless, contest the sufficiency of its contents for these purposes. The memo, moreover, is not direct evidence of the actual date of the Repurchase and there is no indication of when, or if, the document was actually received by the plan participants. Given these uncertainties, consideration of the memo is inappropriate at this time.

Finally, plaintiffs argue that, in any event, the ERISA statute of limitations should be equitably tolled under the "fraud and concealment" exception of 29 U.S.C. § 1113(a) primarily because defendants did not provide the plaintiffs with the WMA valuation underlying the Repurchase. Here, the issue of whether tolling is appropriate is intimately linked with Count V of the complaint (where plaintiffs allege defendants had a legal obligation to release the WMA valuation to them); therefore these issues will be addressed jointly in Section B below.

### A.   Count V- Failure to Disclose the Valuation Report

Count V of the complaint claims statutory penalties for failing to disclose the

5

WMA report in response to requests made by plaintiffs starting in 2008.

Under ERISA, 29 U.S.C. § 1024(b)(4):

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

Plaintiffs contend that the valuation report issued in connection with the Repurchase constituted an "instrument[] under which the plan is established or operated" and therefore was required to be disclosed upon request. While neither the First Circuit nor this court has ruled on this narrow issue, the Fourth Circuit has squarely considered and rejected plaintiffs' argument. Faircloth v. Lundy Packing Co., 91 F.3d 648, 654-55 (4th Cir. 1996) (holding appraisal reports are merely derivative documents that calculate the value of stock based on primary sources and therefore are not instruments that an ESOP is "set up or managed under" for ERISA disclosure purposes). Faircloth is consistent with the First Circuit approach of narrowly construing ERISA's disclosure requirements. See Doe v. Travelers Ins. Co., 167 F.3d 53, 60 (1st Cir. 1999) (holding "'other instruments,' ... refers to the formal legal documents that underpin the plan" and noting "courts have understandably been cautious in reading too broadly disclosure requirements whose violation can trigger a $100 per day penalty"). I am persuaded by the reasoning of Faircloth, and for that matter, the clear language of the statute, that only requires disclosure of specifically enumerated documents or documents under which plans were formed or managed.

Accordingly, the motion to dismiss Count V is allowed.

### I. **Equitable Tolling**

Because no legal duty exists requiring disclosure of the WMA valuation under ERISA to the ESOP participants, defendants could not have committed "fraud and concealment" by refraining from disclosing such information. Further, plaintiffs concede in their opposition papers that by the time of the sale of CPC in 2007 they were on notice of the alleged breach. (Docket # 36 pp. 33-35.) Therefore, defendants' refusal to disclose the valuation report based on plaintiffs' 2008 requests could not possibly have contributed to the plaintiffs' delay in bringing suit.

### B. Waiver of Claims By Plaintiff Thompson

One of the named plaintiffs, David Thompson, acknowledges that he executed a "Separation Agreement and Release." (Docket # 21 Ex. 1.) As a result, defendants argue that Thompson's claims are barred. Thompson responds with an affidavit that does not dispute the authenticity of the Release, but states that he did not knowingly and intelligently waive his ERISA claims because he interpreted the Release to apply only to claims arising directly out of his employment and did not understand ERISA claims to fall under this proscription. (Docket # 27 Ex. A.) The document itself states:

> you hereby release and forever discharge the Company... from any and all ... causes of action in law or equity, of any nature whatsoever... by reason of any matter or thing... arising out of or connected with your employment with, or separation from, the Company, including but not limited to, the Employee Retirement Income Security Act of 1974 [ERISA].

(Docket # 19 Ex. 1 at p. 4.)

The release's language is clear and broad. Further, Thompson received

substantial consideration for the release, including severance pay of $42,848 and a car allowance of $925 per month for six months.

"If [a] district court relies on other material outside the complaint [and not subject to any judicial qualification] ... it must convert a motion to dismiss into a motion for summary judgment. Before such a conversion occurs, however, parties must have a reasonable opportunity to present all material made pertinent to such a motion." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (internal citations omitted). "The presence of affidavits automatically converts motion to dismiss to motion for summary judgment." Gilbert v. City of Cambridge, 932 F.2d 51, 60 (1st Cir. 1991) (internal citations omitted).

Because both the Thompson affidavit (Docket # 27 Ex. A) and the Release are outside of the four corners of the complaint (Docket # 21 Ex. 1), defendants' motions to dismiss all claims against plaintiff Thompson are converted into motions for summary judgment. The parties may submit additional evidence, on the Thompson issue only, within 21 days from the date of this order.

## II. Conclusion

Defendant California Products' and the Individual Defendants' motions to dismiss are ALLOWED as to Count V. As to all counts against plaintiff Thompson, defendants' motions to dismiss are converted to summary judgment motions and the parties have 21 days from the date of this order to file any additional documentation. The remainder of defendants' motions (Docket ## 19 and 22) are DENIED. Plaintiffs' motion for leave to file an amended complaint (Docket # 35) is ALLOWED. Plaintiffs' motion to submit

8

additional authority (Docket # 34) is ALLOWED.

September 28, 2011
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE